David Simantob, SBN 155790
Email: David.Simantob@wilsonelser.com
Shannon L. Santos, SBN 260112
Email: Shannon.Santos@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, California 90071
Tel.: (213) 443-5100
Fax: (213) 443-5101

*Attorneys for Defendant Travelers Property Casualty Company of America*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

BRADLEY LAND COMPANY, a California corporation

Plaintiff,

v.

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation, DOES 1 through 10, inclusive

Defendants.

Case No. 2:25-cv-10605-DSF-JDE
Hon. Dale S. Fischer
Courtroom 7D, 7th Floor

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

[Filed concurrently with Notice, Separate Statement, Request for Judicial Notice, and Proposed Judgment]

Hearing Date: August 31, 2026
Time: 1:30 p.m.
Dept.: 7D

Action Filed: October 1, 2025
Trial Date: Not vet set

/ / /

/ / /

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........................................................................................ 6

II. BACKGROUND ......................................................................................... 7

A. The Policy ............................................................................................ 7

B. The Underlying Action ........................................................................ 8

C. The Claim.............................................................................................. 9

D. Meet and Confer.................................................................................. 10

III. ARGUMENT ........................................................................................... 10

A. Policy Exclusions Are to Be Interpreted Based on the Plain Language of the Policy. ........................................................................................ 10

B. The Pollution Exclusion Bars Coverage for Bradley Land's Defense of the Underlying Action. ............................................................................ 12

1. Each Element of the Pollution Exclusion Is Met by the Allegations in the Underlying Action to Bar Coverage. ................ 12

2. Courts Have Applied Such Pollution Exclusions under Similar Circumstances.................................................................................. 14

3. Despite Bradley Land's Assertion, Widespread Environmental Degradation Is Not Required for Application of the Exclusion..... 15

C. Application of the Pollution Exclusion Bars Bradley Land's Recovery through the FAC. ............................................................ 17

IV. CONCLUSION ......................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*24th & Hoffman Investors, LLC v. Northfield Ins. Co.*,
82 Cal. App. 5th 825 (2022) .......... 11

*AIU Ins. Co. v. Super. Ct.*,
51 Cal. 3d 807 (1990) .......... 11

*Aloha Pac., Inc. v. Cal. Ins. Guar. Ass'n*,
79 Cal. App. 4th 297 (2000) .......... 15

*American Cas. Co. of Reading, Pa. v. Miller*,
159 Cal. App. 4th 501 (2008) .......... 13, 16

*America Cyanamid Co. v. American Home Assur. Co.*,
30 Cal. App. 4th 969 (1994) .......... 11

*Bank of the West v. Super. Ct.*,
2 Cal. 4th 1254 (1992) .......... 11

*Certain Underwriters at Lloyd's of London v. Super. Ct.*,
24 Cal. 4th 945 (2001) .......... 11, 17

*Cold Creek Compost, Inc. v. State Farm Fire & Cas. Co.*,
156 Cal. App. 4th 1469 (2007) .......... 16

*Culligan v. State Comp. Ins. Fund*,
81 Cal. App. 4th 429 (2000) .......... 11

*Davler v. Arch Ins. Co.*,
229 Cal. App. 4th 1025 (2014) .......... 15

*Del Real, LLC v. Harris*,
966 F. Supp. 2d 1047 (E.D. Cal. 2013) .......... 10

*Fibreboard Corp. v. Hartford Accident & Indem. Co.*,
16 Cal. App. 4th 492 (1993) .......... 14

*Garamendi v. Golden Eagle Ins. Co.*,
127 Cal. App. 4th 480 (2005) .......... 15

*Gonzalez v. Fire Ins. Exch.*,
234 Cal. App. 4th 1220 (2015) .......... 10

*Gunderson v. Fire Ins. Exch.*,
37 Cal. App. 4th 1106 (1995) .......... 11

*Hartford Cas. Ins. Co. v. Swift Distr., Inc.*,
59 Cal. 4th 277 (2014) .......... 17

*Kazi v. State Farm Fire & Cas. Co.*,
24 Cal. 4th 871 (2001) .......... 11, 17

*MacKinnon v. Truck Ins. Exch.*,
31 Cal. 4th 635 (2003) .......... 14, 16

*Medina v. GEICO Indem. Co.*,
8 Cal. App. 5th 251 (2017) .......... 10

*Montrose Chem. Corp. of Cal. v. Super. Ct.*,
6 Cal. 4th 287 (1993) .......... 10

*Mountain States Mut. Cas. Co. v. Kirkpatrick*,
2007 U.S. Dist. LEXIS 67420 (D. Colo. Aug. 30, 2007) .......... 12, 13

*Nestle USA Inc. v. Travelers Cas. & Sur. Co. of Am.*,
10 Fed. Appx. 438 (9th Cir. Mar. 22, 2001) .......... 15

*Otworth v. Southern Pac. Transp. Co.*,
166 Cal. App. 3d 452 (1985) .......... 17

*Pepper Indust., Inc. v. Home Ins. Co.*,
67 Cal. App. 3d 1012 (1977) .......... 10

*Reichert v. General Ins. Co. of Am.*,
68 Cal. 2d 822 (1968) .......... 17

*Scottsdale Ins. Co. v. MV Transp.*,
36 Cal. 4th 643 (2005) .......... 17

*Smith Kandal Real Estate v. Continental Cas. Co.*,
67 Cal. App. 4th 406 (1998) .......... 11

*Stockton Mariposa, LLC v. West Am. Ins. Co.*,
585 F. Supp. 3d 1241 (C.D. Cal. 2022) .......... 10

*Tustin Field Gas & Food Inc. v. Mid-Century Ins. Co.*,
13 Cal. App. 5th 220 (2017) ........ 12

*United Nat'l Ins. Co. v. Hydro Tank, Inc.*,
497 F.3d 445 (5th Cir. 2007), amended by 525 F.3d 400 (5th Cir. 2008) ........ 12

*The Villa Los Alamos Homeowners Assn. v. State Farm Gen. Ins. Co.*,
198 Cal. App. 4th 522 (2011) ........ 16

*Waller v. Truck Ins. Exch., Inc.*,
11 Cal. 4th 1 (1995) ........ 10, 11

**Statutes**

Cal. Civ. Code § 1636 ........ 11

Cal. Civ. Code § 1638 ........ 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The parties agree that the material facts necessary to resolve this coverage action are not in dispute. The sole question to be decided is whether the pollution exclusion in the insurance policy Travelers Property Casualty Company of America ("Travelers") issued to Bradley Land Company ("Bradley Land") applies to bar coverage for Bradley Land's defense of the action entitled *Rodriguez v. Bradley Land Co., et. al.*, County of Santa Barbara, Case No. 24CV06679 ("Underlying Action"). As the Commercial General Liability Policy ("Policy") bars coverage for claims arising out of the release of "pollutants," Travelers is entitled to judgment as a matter of law on Bradley Land's First Amended Complaint [Doc. 14] ("FAC").

The Policy expressly excludes coverage for injuries arising out of the release or escape of "pollutants," defined as any "gaseous … irritant or contaminant, including … vapor, … chemicals and waste" ("Pollution Exclusion"). It is undisputed that the sole injury alleged in the Underlying Action was the result of a worker's exposure to hydrogen sulfide gas and other fumes from chemicals stored at Bradley Land's property as part of the oil and gas production operations. Hydrogen sulfide gas constitutes a "pollutant" under the Policy's broad definition of that term. The release of hydrogen sulfide gas at Bradley Land's oil and gas production site is precisely the type of environmental pollution that the exclusion was designed to address.

As the allegations in the Underlying Action fall squarely within the Pollution Exclusion, Travelers owed no duty to defend or indemnify the Underlying Action. The parties never contracted for coverage of lawsuits arising out of such injuries, so Bradley Land could not have reasonably anticipated that such claims would be covered. Thus, Bradley Land cannot recover on its FAC claims for breach of contract and declaratory relief as a matter of law. Travelers is entitled to summary judgment in its favor ("Motion").

/ / /

## II. BACKGROUND

### A. The Policy

Travelers issued Commercial General Liability Policy No. I-660-6796X936-TIL-22 to Bradley Land for the period of May 18, 2022 to May 18, 2023. (Uncontroverted Fact ("UF") 1.) The Policy includes the "Commercial General Liability Coverage Form" [Form CG T1 00 02 19], which provides in pertinent part:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …

* * *

**2. Exclusions**

This insurance does not apply to:

* * *

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or

rented or loaned to, any insured. …

* * *

**SECTION V – DEFINITIONS**

* * *

**4.** "Bodily injury" means:

**a.** Physical harm, including sickness or disease, sustained by a person; or

**b.** Mental anguish, injury or illness, or emotional distress, resulting at any time from such physical harm, sickness or disease.

* * *

**20.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(UF 2.)

**B. <u>The Underlying Action</u>**

On November 22, 2024, Jorge Rodriguez ("Claimant") and Kathy Rodriguez filed the form Complaint in the Underlying Action against Bradley Land and others. The Complaint brought causes of action for negligence, products liability, premises liability, and loss of consortium. (UF 3.)

The Claimant alleges he was a laborer working at 3851 Telephone Road, Santa Maria, California ("Property") between approximately November 30, 2022 and March 3, 2023. (UF 4.) Bradley Land is the owner of the Property and was during that time period. (UF 5.) The Complaint alleges that, during this period, the Claimant "was exposed to various fumes of gases from chemicals store[d] at the site owned, operated, controlled, managed, maintained and/or occupied by Defendants, and each of them." He purportedly "suffered a cardiac arrest and collapsed shortly after arriving home on

March 3, 2023." The Complaint alleges that, after the Claimant was taken to the hospital, "[i]t was determined that [the Claimant] had suffered from exposure to Hydrogen Sulfide gas (H2S)," which purportedly resulted in the cardiac arrest "as well as other physical, mental, psychological and/or emotional injuries." The loss of consortium claim alleges that, as a result of those injuries, the Claimant "is unable to perform the necessary duties as husband and work/services usually performed in the care, maintenance, and management of his family and home." (UF 6.)

The Underlying Action contends the defendants were responsible for the Claimant's injuries due to their failure to safely operate gas lines, gas valves, storage tanks, and/or wells; failure to properly design and/or maintain said equipment; failure to provide proper training and instructions for its employees; and/or failure to provide adequate warnings regarding the dangers of the subject area of operation and the unsafe conditions. (UF 7.) The Underlying Action is ongoing.

**C. <u>The Claim</u>**

On April 1, 2025, Bradley Land tendered the Underlying Action to Travelers. (UF 8.) On April 2nd and 3rd, Bradley Land confirmed that it owns the Property and leases the land to oil and gas production companies, who "produced, removed and sold oil from the" Property. The representative advised that Bradley Land does not know the source of the hydrogen sulfide gas, but it was assumed that the gas was a byproduct of the "petroleum exploration on Bradley's" Property. (UF 9-10.)

On April 21st, Travelers denied coverage based on several coverage defenses, including application of the Pollution Exclusion. (UF 11.) On May 1st, Bradley Land responded that, "[w]hile we do not challenge your coverage determinations at this time, we wish to advise that should an amended complaint be filed or additional facts emerge that may impact your coverage determination or bring the plaintiffs' claims within the scope of coverage of the above policies, we will promptly provide such allegations or facts for your consideration." (UF 12.) On July 17th, Bradley Land requested reconsideration of the declination. (UF 13.) On July 30th, Travelers

maintained its coverage position, denying any defense obligation for the Underlying Action. (UF 14.) Bradley Land again requested reconsideration of the position on September 10th, and Travelers again reiterated its denial on November 21st, specifically addressing the case law that Bradley Land relied on in support of its position. (UF 15-16.)

### D. Meet and Confer

In accordance with L.R. 7-3 and section 4.b. of the Court's Standing Order for Cases Assigned to Judge Dale S. Fischer, the parties have met and conferred on this Motion in advance of filing. [Doc. 21, Stipulation to Authenticate Exhibits.]

## III. ARGUMENT

### A. Policy Exclusions Are to Be Interpreted Based on the Plain Language of the Policy.

This coverage determination is appropriate for the Court to decide through summary judgment. "Interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). "Summary judgment is an appropriate vehicle to determine coverage under an insurance policy." *Pepper Indust., Inc. v. Home Ins. Co.*, 67 Cal. App. 3d 1012, 1017 (1977); *see also*, *Stockton Mariposa, LLC v. West Am. Ins. Co.*, 585 F. Supp. 3d 1241, 1247 (C.D. Cal. 2022), quoting *Del Real, LLC v. Harris*, 966 F. Supp. 2d 1047, 1051 (E.D. Cal. 2013) ("Where the issues before the Court are questions of law, the case is particularly 'well suited' for summary judgment.").

"[A]n insured has the burden of proving its claim falls within the scope of the policy's basic coverage, even where the insurer brings a motion for summary judgment." *Medina v. GEICO Indem. Co.*, 8 Cal. App. 5th 251, 259 (2017), quoting *Gonzalez v. Fire Ins. Exch.*, 234 Cal. App. 4th 1220, 1230 (2015); *see also*, *Montrose Chem. Corp. of Cal. v. Super. Ct.*, 6 Cal. 4th 287, 300 (1993) (holding "the insured must prove the existence of a *potential for coverage*," such that "the underlying claim *may* fall within policy coverage" (emphasis in original)). "While insurance contracts

have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1264 (1992). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Id*. at 1264; *see also*, Cal. Civ. Code § 1636; *AIU Ins. Co. v. Super. Ct.*, 51 Cal. 3d 807, 821 (1990). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *AIU Ins. Co.*, 51 Cal. 3d at 822; *Culligan v. State Comp. Ins. Fund*, 81 Cal. App. 4th 429, 434 (2000). "If contractual language is clear and explicit, it governs." *Bank of the West*, 2 Cal. 4th at 1264; *see also*, Cal. Civ. Code § 1638. "Courts will not strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18-19.

The "duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Id*. at 19. "There is no question that an insurer is not required to defend an action where undisputed facts conclusively show that the underlying conduct is not within the coverage of the policy." *America Cyanamid Co. v. American Home Assur. Co.*, 30 Cal. App. 4th 969, 975 (1994). "[W]here there is no duty to defend, there cannot be a duty to indemnify." *Certain Underwriters at Lloyd's of London v. Super. Ct.*, 24 Cal. 4th 945, 958 (2001). Under California law, "[a]n insurer ordinarily is free to limit the risks it assumes," and courts "do not rewrite any provision of any contract, including an insurance contract, for any purpose, including perceived public policy benefits." *24th & Hoffman Investors, LLC v. Northfield Ins. Co.*, 82 Cal. App. 5th 825, 833 (2022); *see also*, *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1118 (1995) ("An insurance company has the right to limit the coverage of a policy issued by it and the plain language of the limitation must be respected."); *Smith Kandal Real Estate v. Continental Cas. Co.*, 67 Cal. App. 4th 406, 414 (1998) ("An insurer may select the risks it will insure and those it will not, and a clear exclusion will be respected."). An insurer has no duty to defend where a policy exclusion unambiguously bars all potential for coverage. *Kazi v. State Farm Fire & Cas. Co.*, 24 Cal. 4th 871, 880 (2001).

Applying these contract interpretation principles to the instant dispute, Travelers owed no duty to defend or indemnify Bradley Land in the Underlying Action.

**B. <u>The Pollution Exclusion Bars Coverage for Bradley Land's Defense of the Underlying Action.</u>**

The sole issue in dispute in this action is whether the Pollution Exclusion applies to bar coverage for Bradley Land's claim. As the Underlying Action is predicated on harm that occurred when the Claimant was exposed to "[h]ydrogen Sulfide gas (H2S)" at the oil and gas production site on Bradley Land's Property through the "[g]as line/Valve/gas tank/gas well/gas fumes/gas/chemicals unknown," the Pollution Exclusion is dispositive of Bradley Land's claim.

**1. Each Element of the Pollution Exclusion Is Met by the Allegations in the Underlying Action to Bar Coverage.**

The unambiguous language of the Pollution Exclusion involves the following elements:

1. A claim for "bodily injury";
2. Arising out of the "discharge, dispersal, seepage, migration, release or escape" at or from a site at any time owned by the insured;
3. Of "pollutants," defined in part as any "gaseous … irritant or contaminant, including smoke, vapor, … fumes, … chemicals and waste."

There is no dispute that the Underlying Action constitutes a claim for "bodily injury" from exposure to a gas release at and dispersed from a site owned by Bradley Land. The only element in dispute is whether hydrogen sulfide gas constitutes a "pollutant." Hydrogen sulfide gas falls plainly within the Policy definition of a "pollutant" as a toxic gas, triggering application of the exclusion to the claim. *Tustin Field Gas & Food, Inc. v. Mid-Century Ins. Co*., 13 Cal. App. 5th 220, 227 (2017) ("When a policy defines the term, that definition controls.").

Courts across the country have concluded that such gases constitute pollutants. *United Nat'l Ins. Co. v. Hydro Tank, Inc.*, 497 F.3d 445, 448-449 (5th Cir. 2007),

amended by 525 F.3d 400, 402 (5th Cir. 2008) (upholding summary judgment ruling applying pollution exclusion to allegations of injury from exposure to "hydrogen sulfide and/or other chemicals and vapors."); *Mountain States Mut. Cas. Co. v. Kirkpatrick*, 2007 U.S. Dist. LEXIS 67420, *10, 13 (D. Colo. Aug. 30, 2007) (granting summary judgment to the insurer on the pollution exclusion by holding, "I agree with Mountain States that under the plain meaning of the words and in the context of the facts and circumstances alleged in the Underlying Lawsuit, the kitchen waste [resulting in hydrogen sulfide gas] constitutes a contaminant, and therefore a pollutant as defined in the policy. In this circumstance, I conclude that 'contaminant' is not ambiguous."); *see also*, *American Cas. Co. of Reading, Pa. v. Miller*, 159 Cal. App. 4th 501, 504 (2008) (upholding summary judgment ruling applying pollution exclusion, holding, "An ordinary insured would reasonably expect that the release of methylene chloride into a public sewer is environmental pollution.").

It cannot be reasonably disputed that hydrogen sulfide gas "is highly toxic." *Mountain States Mut. Cas. Co.*, 2007 U.S. Dist. LEXIS 67420 at *2. Even the U.S. Department of Labor's "Occupational Safety and Health Administration" ("OSHA") describes the hydrogen sulfide gas as "highly toxic" and concludes, "H2S gas causes a wide range of health effects depending on how much H2S is inhaled, and for how long. Exposure to high concentrations can quickly lead to incapacitation and death. … A condition referred to as 'knockdown,' or swift unconsciousness, can occur in such locations, with collapse occurring with 1 to 2 breaths. Breathing then stops and death occurs within minutes if H2S exposure continues." (UF 17.) For this reason, OSHA provides specific warnings and recommendations to employers about the risks of exposure to this gas. Travelers has met its burden to show hydrogen sulfide gas constitutes "solid, liquid, gaseous or thermal irritant or contaminant" to trigger application of the exclusion.

The Pollution Exclusion broadly describes any mechanism by which pollutants move from their source into the environment. As the Underlying Action is premised

upon the Claimant's exposure to the gas released and dispersed at Bradley Land's Property, every element of the Pollution Exclusion is met to bar coverage for the claim.

**2. Courts Have Applied Such Pollution Exclusions under Similar Circumstances.**

Such exclusions have been broadly applied by California courts to bar coverage for an insured's defense. The California Supreme Court in *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 653 (2003) directed that "the scope of the pollution exclusion" applies "to injuries arising from events commonly thought of as pollution, i.e., environmental pollution." The Court instructed that application of the exclusion requires consideration of the nature of the pollutant "in conjunction" with the mechanism of exposure, *i.e.*, the "discharge, dispersal, release, or escape." *Id*.

The release of hydrogen sulfide gas at an oil and gas production site is the paradigmatic example of "events commonly thought of as pollution." The *MacKinnon* court observed that "the common understanding of the word 'pollute' indicates that it is something creating impurity, something objectionable and unwanted." *Id*. at 654 (citation omitted). The Policy's definition of "pollutants" expressly includes "fumes" and "chemicals," both of which describe the substances to which the Claimant was allegedly exposed. (UF 2, 6.) Hydrogen sulfide is a recognized hazardous air pollutant associated with petroleum extraction and refining. Its release from gas lines, gas valves, storage tanks, and wells at the Property, a petroleum production facility, is quintessential environmental pollution, precisely the kind of event the Pollution Exclusion was designed to exclude. The Underlying Action does not involve a common consumer product or household chemical, which are the only situations where the California Supreme Court noted the exclusion may not apply. *MacKinnon*, 31 Cal. 4th at 655.

California law mandates an expansive interpretation of the phrase "arising out of" in an exclusion, deeming it to be "of broader significance than 'caused by.'" *Fibreboard Corp. v. Hartford Accident & Indem. Co.*, 16 Cal. App. 4th 492, 503

(1993); *see also*, *Davler v. Arch Ins. Co.*, 229 Cal. App. 4th 1025, 1035 (2014); *Aloha Pac., Inc. v. Cal. Ins. Guar. Ass'n*, 79 Cal. App. 4th 297, 319 (2000) (holding the phrase "arising out of" in an exclusion "broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship."); *Nestle USA Inc. v. Travelers Cas. & Sur. Co. of Am.*, 10 Fed. Appx. 438, 439-440 (9th Cir. Mar. 22, 2001) ("California courts interpret the term 'arising out of' broadly in various kinds of insurance provisions. This is true even when the term is used in an exclusionary provision and a broad interpretation results in limiting coverage."). The phrase "arising out of" is ordinarily understood to mean "originating from, having its origin in, growing out of, or flowing from" and requires only a "minimal causal connection or incidental relationship." Here, the causal connection between the release of hydrogen sulfide gas from the petroleum production operations at Bradley Land's Property and the injuries is not merely "incidental." It is the direct and proximate cause of all injuries alleged in the Underlying Action based on the Claimant's own language.

Relying on this case law, the Pollution Exclusion should be interpreted broadly to apply to the allegations in the Underlying Action. Given the facts of the Underlying Action though, the Court need not even get that far. Even a narrow interpretation of the Pollution Exclusion would lead to the same result. The Policy was simply not intended to cover this type of injury from "pollutants" on the insured's land.

**3. Despite Bradley Land's Assertion, Widespread Environmental Degradation Is Not Required for Application of the Exclusion.**

In seeking reconsideration of the coverage determination, Bradley Land argued that the Pollution Exclusion only applies to "widespread environmental contamination" as opposed to the instant case of a "localized" exposure. This argument has been squarely rejected by California courts.

In *Garamendi v. Golden Eagle Ins. Co.*, 127 Cal. App. 4th 480, 486 (2005), the Court of Appeal explicitly held that "there need not be 'wholesale environmental

degradation'" for a pollution exclusion to apply. Rather, the Court explained that "the widespread dissemination of silica dust as an incidental by-product" of industrial operations "most assuredly is what is 'commonly thought of as pollution' and 'environmental pollution.'" Similarly, in *The Villa Los Alamos Homeowners Assn. v. State Farm General Ins. Co.*, 198 Cal. App. 4th 522, 540-542 (2011), the Court of Appeal held that "the release of asbestos fibers into the air" in a single condominium building, whether or not "widely dispersed," "constituted environmental pollution within the meaning of the pollution exclusion." Courts have further held that widespread contamination beyond the immediate area of effect is "not determinative" of whether the event is "commonly thought of as environmental pollution." *American Cas. Co. of Reading, Pa.*, 159 Cal. App. 4th at 516. Rather, the proper test under *MacKinnon* "is not based upon the extent of injury, but upon the type of pollutant and how it is released into the environment." *Id*.

Bradley Land relies on *Cold Creek Compost, Inc. v. State Farm Fire & Cas. Co.*, 156 Cal. App. 4th 1469 (2007) for the conclusion that the Pollution Exclusion does not apply to localized toxic events, such as odors and dust from a composting operation. This mischaracterizes the holding. The *Cold Creek Compost* decision actually reaffirmed that dust and similar airborne substances are pollutants within the meaning of the exclusion and applied the *MacKinnon* framework to analyze whether the particular mechanism of release constituted "pollution." *Id*. at 1480. Here, unlike odors from a composting facility, which a court might find not to be a "pollutant," the release of hydrogen sulfide gas from petroleum production equipment is classic industrial environmental pollution. The nature of the pollutant (toxic industrial gas) and the mechanism of release (escape from an oil and gas site) place this case firmly within the category of events "commonly thought of as pollution" to trigger application of the Pollution Exclusion. *MacKinnon*, 31 Cal. 4th at 653. This conclusion is not altered just because the exposure may have been localized to the immediate vicinity of the production site.

Courts in multiple jurisdictions have consistently applied pollution exclusions to bar coverage for injuries arising from exposure to toxic gases and chemicals at industrial sites. This case law dictates that the Pollution Exclusion applies to Bradley Land's claim.

**C. <u>Application of the Pollution Exclusion Bars Bradley Land's Recovery through the FAC.</u>**

As the Pollution Exclusion barred coverage for Bradley Land's defense of the Underlying Action, each cause of action in the FAC fails as a matter of law, warranting summary judgment in Travelers' favor.

To succeed on the first cause of action for breach of contract, Bradley Land would have to prove the following elements: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Reichert v. General Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968); *see also*, *Otworth v. Southern Pac. Transp. Co.*, 166 Cal. App. 3d 452, 458 (1985). In evaluating whether coverage exists under the Policy, an insurer's "duty to defend depends, in the first instance, on a comparison between the allegations of the [third party] complaint and the terms of the policy." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654-655 (2005). As noted, an insurer has no duty to defend where there is no potential for coverage under the Policy, similarly eliminating any indemnity obligation. There is no duty to defend when "the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Hartford Cas. Ins. Co. v. Swift Distr., Inc.*, 59 Cal. 4th 277, 288 (2014) (citation omitted); *see also*, *Kazi*, 24 Cal. 4th at 880; *Certain Underwriters at Lloyd's of London*, 24 Cal. 4th at 958 ("[W]here there is no duty to defend, there cannot be a duty to indemnify.").

The FAC alleges that Travelers breached the Policy, because it "unreasonably denied Plaintiff the benefits due under the Policy, namely, to provide a legal defense of the Rodriguez Lawsuit" and "by failing their duty to defend." (FAC, ¶¶ 25-26.) There

is no other claim for breach of the Policy. Every single theory of liability alleged in the Underlying Action – general negligence, premises liability, products liability, and loss of consortium – is predicated on the injuries the Claimant purportedly sustained after he was exposed to hydrogen sulfide gas or "various fumes of gases from chemicals" at the Property, triggering application of the Pollution Exclusion. As the Underlying Action does not, under any conceivable theory, state a claim for "bodily injury" that falls outside the Pollution Exclusion, Bradley Land cannot show Travelers breached the Policy by denying coverage for the claim.

For the same reasons, the determination of the declaratory relief cause of action in the FAC, seeking a declaration "that the Policy issued by [] Travelers is triggered …, requiring [] Travelers to provide a defense to Plaintiff in the Rodriguez Lawsuit" will be in Travelers' favor. (FAC, ¶ 30.) Given application of the Pollution Exclusion, Travelers is entitled to a declaration that it owes no duty to defend or indemnify Bradley Land in the Underlying Action.

As Bradley Land cannot meet its obligation to prove the elements of each cause of action sought through the FAC, the Court is warranted in granting this Motion.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Travelers respectfully requests that the Court grant this Motion and enter judgment in favor of Travelers on Bradley Land's FAC.

Dated: June 22, 2026

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

By: <u>*/s/ Shannon L. Santos*</u>
David Simantob
Shannon L. Santos
Rachel M. Rowzee
*Attorneys for Defendant Travelers Property Casualty Company of America*