Eric R. Little (SBN 169021)
elittle@littletarzi.com
Najwa Tarzi (SBN 210415)
ntarzi@littletarzi.com
LITTLE & TARZI APC
3333 Michelson Dr Ste 735
Irvine, CA 92612-7679
Ph: 949-333-1699; Fax: 949-333-1697

**Attorneys for Plaintiff:**
BRADLEY LAND COMPANY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| BRADLEY LAND COMPANY, a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut Corporation, DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:25-cv-10605-DSF-JDE<br><br>Honorable Dale S. Fischer<br><br>**PLAINTIFF BRADLEY LAND COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>**Hearing: August 31, 2026**<br>**Time: 1:30 p.m.**<br>**Crtrm: 7D**<br><br>Action Filed: October 1, 2025<br>Trial Date: Not yet set |

**TABLE OF CONTENTS**


I. INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

II. FACTUAL BACKGROUND ..... 4

A. Travelers' Policy ..... 4

B. The *Rodriguez* Action ..... 5

C. Travelers' Denial ..... 6

III. STANDARD OF REVIEW ..... 7

IV. ARGUMENT ..... 7

A. Travelers' Defense Duty Is Triggered by a Mere Potential of Coverage 7

B. Travelers Had a Duty to Defend Bradley Immediately and Completely Upon Receiving Notice of the *Rodriguez* Action ..... 9

C. The *Rodriguez* Action Alleges "Bodily Injury" Caused by an "Occurrence" ..... 9

D. The Pollution Exclusion Does Not Apply ..... 10

1. California Law Requires Exclusions To Be Interpreted Narrowly Against the Insurer ..... 10

2. Travelers Cannot Establish Application of the Pollution Exclusion as a Matter of Law ..... 11

a. The Pollution Exclusion Does Not Apply Under *MacKinnon* ..... 11

b. Cases Applying Reasoning Similar to *MacKinnon* Confirm That the Pollution Exclusion Does Not Apply to Hydrogen Sulfide Exposure ..... 16

c. Travelers Could Not Establish Application of the Pollution Exclusion Based on the Allegations Known at Tender ..... 19

E. Travelers Failed to Carry Its Burden ..... 21

V. AS A BREACHING INSURER, TRAVELERS MUST REIMBURSE BRADLEY'S DEFENSE FEES AND COSTS ..... 23

VI. BRADLEY IS ENTITLED TO PREJUDGMENT INTEREST ...................... 24
VII. CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*Align Tech., Inc. v. Federal Ins. Co.*,
673 F. Supp. 2d 957 (N.D. Cal. 2009) .......... 10

*American Zurich Ins. Co. v. James N. Gray Co.*,
2014 WL 11430928 (C.D. Cal. July 25, 2014) .......... 16, 22

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 7

*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*,
100 Cal. App. 4th 1017 (2002) .......... 3, 8, 10,11, 22

*Atmel Corp. v. St. Paul Fire & Marine Insurance Co.*,
426 F.Supp.2d 1039 (N.D. Cal. 2005) .......... 24

*Bias v. Moynihan,*
508 F.3d 1212 (9th Cir. (Cal.) 2007) .......... 7

*Buss v. Superior Court*,
16 Cal. 4th 35 (1997) .......... 2, 8, 9

*Celotex Corp. v. Catrett,*
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .......... 7

*CNA Cas. of Ca. v. Seaborad Sur. Co.*,
176 Cal. App. 3d 598 (1986) .......... 7

*Concept Enters., Inc. v. Hartford Ins. Co. of the Midwest*,
2001 WL 34050685 (C.D. Cal. May 22, 2001) .......... 23

*Essex Ins. Co., Inc. v. Berkshire Environmental Consultants, Inc.,*
2002 WL 226172 (D. Mass., Feb. 7, 2002) .......... 17,18, 19, 21, 22

*First Am. Title Ins. Co. v. XWarehouse Lending Corp.,*
177 Cal.App.4th 106, 113, (2009) .......... 7

*Gainsco Ins. Co. v. Amoco Production Co.*,
53 P.3d 1051 (Wyo. 2002) .......... 11, 12, 22

*Gonzalez v. Fire Ins. Exch.*,
234 Cal.App.4th 1220 (2015) .......... 14

*Gray v. Zurich Ins. Co.*
65 Cal.2d 263 (1966) .......... 8, 22

*Hanover Am. Ins. Co. v. Francini, Inc.*,
2026 WL 1020523 (C.D. Cal. Mar. 31, 2026) .......... 16, 22

*Hartford Casualty Insurance Co. v. J.R. Marketing*,
216 Cal.App.4th 1444 (2013), *aff'd in relevant part*, 61 Cal.4th 988 (2015) 24

*Haskel, Inc. v. Sup. Court*,
33 Cal. App. 4th 963 (1995) .......... 2, 19, 20, 22

*Hudson Ins. Co. v. Colony Ins. Co.*,
624 F.3d 1264 (9th Cir. (Cal.) 2010) .......... 7

*Hyundai Motor Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
600 F.3d 1092 (9th Cir. (Cal.) 2010) .......... 7

*KM Strategic Management, LLC v. American Cas, Co. of Reading PA,*
156 F.Supp.3d 1154 (C.D. Cal. 2015) .......... 9, 10

*Liberty Mut. Fire Ins. Co. v. LX Hausys Am., Inc.*,
2026 WL 904224 (C.D. Cal. Mar. 31, 2026) .......... 16, 22

*Liberty Surplus Ins. Corp. v. Ledesma & Meyer Construction Co.*,
5 Cal.5th 216 (2018), *as modified* (July 25, 2018) .......... 10

*Longs Drug Stores Cal., Inc. v. Federal Ins. Co.*,
2005 WL 2072296 (N.D. Cal. Aug. 26, 2005) .......... 25

*MacKinnon v. Truck Ins. Exchange*,
31 Cal.4th 635 (2003) .......... 3, 8, 10,11, 12, 13, 14, 15, 16, 17, 19, 21, 22

*Mirpad, LLC v. Calif. Ins.Guar. Assn.*,
132 Cal.App.4th 1058 (2005) .......... 8, 22

*Montrose Chem. Corp. v. Sup. Court*,
6 Cal. 4th 287 (1993)....................1, 2, 8, 9, 20

*National Fire Ins. Co. of Hartford v. James River Ins.*,
162 F.Supp.3d 898 (D. Ariz. 2016)....................17, 19, 21, 22

*Pension Trust Fund for Operating Eng'rs v. Federal Ins. Co.*,
307 F.3d 944 (9th Cir. (Cal.) 2002)....................2

*Risely v. Interinsurance Exch. of the Auto. Club*,
183 Cal.App.4th 196 (2010)....................23

*Santaluz, LLC v. American Home Assurance Company*,
2010 WL 11509307 (S.D. Cal., Aug. 6, 2010)....................13,14, 15, 21, 22

*Southern Calif. Edison Co. v. Greenwich Ins. Co.*,
2023 WL 5505901 (C.D. Cal. July 28, 2023)....................24

*The Upper Deck Co., LLC v. Federal Ins. Co.*,
358 F.3d 608 (9th Cir. (Cal.) 2004)....................8, 9, 19, 20

*Tilbury Contructors, Inc. v. State Comp. Ins. Fund*,
137 Cal.App.4th 466 (2006)....................1

*Travelers Property Cas. Co. of Am. v. City of Los Angeles Harbor Dept.*,
2016 WL 11520822 (C.D. Cal., Sept. 9, 2016)....................15, 16, 21, 22

*Ultra Coachbuilders, Inc. v. General Security Ins.*,
229 F.Supp.2d 284 (S.D.N.Y. 2002)....................25

*Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co.*,
68 Cal. App. 4th 1030 (1998)....................8, 9

*Wesco Ins. Co. v. Brad Ingram Constr.*,
2024 WL 243344 (9th Cir. (Cal.) 2024)....................16, 22

## **STATUTES**

California Civil Code § 2860....................23, 24

California Civil Code § 3287(a) ........................................................ 24

Fed. R. Civ. P. 56(a) ........................................................ 7

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Bradley Land Company ("Bradley") moves for summary judgment on its First Amended Complaint ("FAC") [Dkt. No. 14] for Breach of Contract and Declaratory Relief on the grounds that Defendant Travelers Property Casualty Company of America ("Travelers"): (1) owed Bradley a duty to defend in the action styled as, *Rodriguez v. Bradley Land Company, et al., Superior Court of California*, County of Santa Barbara, Case No. 24CV06679 ("*Rodriguez* Action"); (2) breached that duty by refusing to defend Bradley in the *Rodriguez* Action; and, as a result, (3) is obligated to reimburse Bradley for all reasonable and necessary defense fees and costs incurred in the *Rodriguez* Action from the date of tender through final resolution of the *Rodriguez* Action at defense counsel's full rates, without limitation under California Civil Code section 2860; and (4) Bradley is entitled to recover prejudgment interest on the unreimbursed defense fees and costs.

The primary purpose of liability insurance is to provide insureds with security and peace of mind through the assurance that they will receive the protection promised by their policies when a claim is made against them. *See Tilbury Constructors, Inc. v. State Comp. Ins. Fund*, 137 Cal.App.4th 466, 475 (2006). Travelers deprived Bradley of that protection by refusing to defend the Rodriguez Action despite a clear potential for coverage. As a result, Bradley was forced to fund its own defense in the very circumstance for which it purchased liability insurance.

Travelers issued a Commercial General Liability Policy requiring Travelers to defend Bradley against any suit seeking damages because of bodily injury caused by an occurrence.

The California Supreme Court has made clear that an insurer's duty to defend is so broad that "*a bare 'potential' or 'possibility' of coverage*" is all that is required to trigger the duty, and "any doubt as to whether facts give rise to a duty to defend *is resolved in the insured's favor*." *Montrose Chem. Corp. v. Sup. Court*, 6 Cal. 4th 287,

299-300 (1993) (emphases added). The duty continues until the underlying lawsuit is concluded or until the insurer conclusively proves, through undisputed facts, that there is no potential for coverage. *Id. Pension Trust Fund for Op. Eng'rs v. Federal Ins. Co.*, 307 F.3d 944, 951 (9th Cir. (Cal.) 2002) went further, stating that "*remote facts* buried within causes of action that may potentially give rise to coverage *are sufficient to invoke the defense duty*." (emphasis added)

The duty to defend is determined <u>at the time the insurer receives notice</u> of the underlying action, by comparing the allegations of the underlying complaint to the terms of the policy. *Haskel, Inc. v. Sup. Court*, 33 Cal. App. 4th 963, 976–77 (1995). "To defend meaningfully, the insurer must defend immediately…To defend immediately, it must defend entirely." *Buss v. Sup. Court*, 16 Cal. 4th 35, 49 (1997).

The *Rodriguez* Action alleges that Jorge Rodriguez suffered bodily injury after being exposed to gases or fumes, including hydrogen sulfide, at a single worksite. Those allegations potentially fall within Travelers' bodily injury coverage. Travelers' sole basis for denial of a defense is that its policy's Pollution Exclusion eliminates all potential for coverage because the Complaint alleges injury from hydrogen sulfide.

This case is not about whether hydrogen sulfide can ever qualify as a pollutant. It is about whether, at the time of tender, the sparse allegations before Travelers conclusively demonstrated that the alleged exposure constituted traditional environmental pollution, thereby negating Travelers' broad duty to defend.

At the time of tender, Travelers lacked the conclusive evidence necessary to eliminate the potential for coverage and therefore owed Bradley a defense.

California law imposes on Bradley the relatively light burden of demonstrating a potential for coverage. To defeat its defense obligation, Travelers bears the heavy burden of establishing through undisputed facts that the claims against Bradley "can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Montrose,* 6 Cal. 4th at 300.

The *Rodriguez* Complaint alleged potentially covered claims. To avoid its defense obligation, Travelers bears the burden of proving, through conclusive evidence, that the Pollution Exclusion applies "in all possible worlds." *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal.App.4th 1017, 1039 (2002). Because exclusions are construed narrowly and in favor of coverage, Travelers cannot satisfy its burden of conclusively establishing that the Pollution Exclusion eliminates all potential for coverage.

The *Rodriguez* allegations are far too sparse to permit a conclusion that the alleged incident constituted the type of traditional environmental pollution contemplated by *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635 (2003). The Complaint merely alleges that Rodriguez was exposed to gases or fumes from chemicals stored at the site and later suffered a cardiac arrest. It contains no facts regarding the nature, scope, duration, mechanism, or extent of the alleged exposure; whether any gas escaped into the environment; whether there was any meaningful discharge, dispersal, release, or escape; or whether the incident involved environmental contamination of any kind. The Complaint names multiple defendants and is silent regarding Bradley's specific conduct. Travelers is therefore assuming not only that there was environmental pollution, but also that Bradley was the actor responsible for whatever release occurred. At a minimum, the allegations leave open numerous reasonable scenarios under which the claimed injury arose from a potentially localized workplace exposure rather than traditional environmental pollution. Those possibilities alone are sufficient to trigger Travelers' duty to defend.

As demonstrated below, *MacKinnon* and the numerous decisions applying it confirm that the Pollution Exclusion is limited to traditional environmental pollution and cannot be invoked merely because a potentially harmful substance is involved. Further, courts that have specifically addressed claims involving hydrogen sulfide exposure have concluded that pollution exclusions do not eliminate the insurer's duty to defend. Because Travelers could not conclusively establish from the sparse

allegations known at the time of tender that the Pollution Exclusion applied, and because numerous cases discussed below have held that hydrogen sulfide exposure does not fall under the pollution exclusion, Travelers owed Bradley a defense.

Travelers denied a defense in a case involving multiple defendants, a one-paragraph negligence cause of action, no allegations of environmental contamination, no allegations regarding dissemination, and no facts establishing Bradley's role. California law does not permit an insurer to deny a defense based on speculation about those factual gaps. By wrongfully refusing to provide a defense, Travelers breached its contractual obligations under the Policy, entitling Bradley to recover all defense fees and costs incurred as a result of that breach, together with prejudgment interest.

## II. FACTUAL BACKGROUND

### A. Travelers' Policy

Travelers issued Commercial General Liability Policy No. I-660-6796X936-TIL-22 to Bradley Land Company for the policy period May 18, 2022 through May 18, 2023, with a $2 million per-occurrence limit ("Policy"). [Statement of Uncontroverted Facts ("SUF") ¶1]

The Policy provides in pertinent part as follows:

#### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . We will have the right and duty to defend the insured against any "suit" seeking those damages…

…

b. This insurance applies to "bodily injury" … only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" … [SUF, ¶2]

…

#### 2. Exclusions

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" … arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. [SUF, ¶3]

…

**SECTION V - DEFINITIONS**

…

4. "Bodily injury" means:

a. Physical harm, including sickness or disease, sustained by a person; or

b. Mental anguish, injury or illness, or emotional distress, resulting at any time from such physical harm, sickness or disease.

[SUF, ¶4]

…

17. "Occurrence" means:

a. an accident, including continuous or repeated exposure to substantially the same general harmful conditions. [SUF, ¶5]

…

20. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. [SUF, ¶6]

**B. The *Rodriguez* Action**

On November 11, 2024, Jorge Rodriguez and Kathy Rodrigues filed a form

Complaint in the *Rodriguez* Action against multiple defendants. The Complaint asserts causes of action for General Negligence; Premises Liability; Products Liability; and Loss of Consortium. [SUF, ¶¶7-8]

The Negligence cause of action alleges that Jorge Rodriguez worked as a laborer for a company other than Defendants, at a jobsite located in Santa Maria, California, between approximately November 30, 2022 and March 3, 2023, and that during that period Rodriguez was exposed to fumes and gases from chemicals stored at the site and suffered a cardiac arrest. The Complaint further alleges that it was determined that his injuries were caused by exposure to hydrogen sulfide gas. [SUF ¶9]

The Complaint alleges that Defendants were negligent in, among other things, operating, designing, maintaining, and warning about gas lines, gas valves, storage tanks, and wells located at the site. [SUF ¶9]

### C. Travelers' Denial

Bradley provided notice of the *Rodriguez* Action to Travelers on April 1, 2025. [SUF, ¶10] By email dated April 2, 2025, Travelers confirmed that the *Rodriguez* Complaint is unclear as to the alleged hydrogen sulfide gas and asked Bradley for additional information. [SUF, ¶11] By response email on April 2, 2025, counsel for Bradley responded to Travelers' inquiry and confirmed that Bradley did not have definitive information as to the alleged hydrogen sulfide. [SUF, ¶12] By email dated April 3, 2025, Bradley further responded to Travelers and again confirmed its lack of knowledge as to the facts surrounding the alleged hydrogen sulfide. [SUF, ¶13]

On April 21, 2025, Travelers denied coverage, asserting that the Policy's Pollution Exclusion eliminated any potential for coverage. [SUF, ¶14]

On July 17, 2025, Bradley requested that Travelers reconsider its denial of coverage. [SUF, ¶16] On July 30, 2025, Travelers reaffirmed its denial. [SUF, ¶17] On September 10, 2025, Bradley made a final demand that Travelers honor its defense obligations. [SUF, ¶18] On September 24, 2025, Travelers reaffirmed its denial. [SUF,

¶19] On November 21, 2025, Travelers issued a supplemental denial letter. [SUF, ¶20]

## III. STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). Once that burden is met, the opposing party must set forth specific facts demonstrating a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). *See also Bias v. Moynihan,* 508 F.3d 1212, 1218 (9th Cir. (Cal.) 2007). Summary judgment is particularly appropriate in insurance coverage disputes because the interpretation of an insurance policy and the existence of a duty to defend generally present questions of law for the Court. *See First Am. Title Ins. Co. v. XWarehouse Lending Corp.,* 177 Cal. App. 4th 106, 113 (2009). Where the relevant policy language and underlying allegations are undisputed, the existence of a duty to defend is appropriately resolved on summary judgment.

## IV. ARGUMENT

### A. Travelers' Defense Duty Is Triggered by a Mere Potential of Coverage

The duty to defend in California is extensive. *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. (Cal.) 2010). An insurer owes a broad duty to defend its insured, and that duty must be assessed at the outset of the case. *CNA Cas. of Cal. v. Seaboard Sur. Co.* 176 Cal. App. 3d 598, 610 (1986).

Insurers owe a duty to defend any suit that "potentially seeks damages within the coverage of the policy." *Hyundai Motor Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 600 F.3d 1092, 1097 (9th Cir. (Cal.) 2010); *see also CNA Cas., Co.* 176 Cal. App. 3d at 606 ("as long as the complaint contains language creating the potential of liability under an insurance policy, the insurer must defend[.]"). "The insurer's duty

to defend runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed. . . . It arises as soon as tender is made. It is discharged when the action is concluded." *Buss,* 16 Cal. 4th at 46.

"The determination of potential coverage is made at the time the lawsuit is tendered to the insurance company." *The Upper Deck Co., LLC v. Federal Ins. Co.,* 358 F.3d 608, 612 (9th Cir. (Cal.) 2004). The insurer cannot refuse its defense duty based on hindsight or facts not known by the insurers at the time of tenders. *Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co.*, 68 Cal. App. 4th 1030, 1044 (1998).

As an insurer in California, Travelers owed Bradley an absolute duty to "defend a suit which *potentially* seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.* 65 Cal.2d 263, 275 (1966) (italics in original); *see also Montrose Chemical*, 6 Cal.4th at 295. Once the insured demonstrates a mere potential for coverage, the burden shifts to the insurer to establish through undisputed facts that there is no possibility of coverage. "The insured need only show that the underlying claim may fall within the policy coverage; the insurer must prove it cannot." *Id.* at 300.

Indeed, where coverage turns on unresolved factual questions, the existence of those disputes itself establishes a potential for coverage sufficient to trigger the duty to defend. *Mirpad, LLC v. Calif. Ins.Guar. Assn.*, 132 Cal.App.4th 1058, 1068 (2005) ("If coverage depends on an unresolved dispute over a factual question, the very existence of that dispute would establish a possibility of coverage and thus a duty to defend.").

Lastly, exclusionary clauses must be interpreted narrowly. While "coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured ... exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003). Travelers therefore bears the burden of proving through undisputed and conclusive evidence that the claim falls entirely within a policy exclusion. *J. Lamb, Inc.*, 100 Cal. App. 4th at 1039.

Accordingly, while Bradley need only demonstrate a potential for coverage,

Travelers, by contrast, must establish through undisputed evidence that the pollution exclusion terminates its duty to defend Bradley in the *Rodriguez* Action. *Id.* As demonstrated below, Travelers cannot satisfy that burden.

### B. Travelers Had a Duty to Defend Bradley Immediately and Completely Upon Receiving Notice of the *Rodriguez* Action

Under California law, an insurer's duty to defend arises immediately upon tender of a potentially covered claim. "Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: The full protection of a defense on its behalf." *Montrose*, 6 Cal.4th at 295.

"The determination of potential coverage is made at the time the lawsuit is tendered to the insurance company." *Upper Deck*, 358 F.3d at 612 (citations omitted).

Likewise, when an insurer's duty to defend is triggered, the insurer must provide a complete defense immediately. *Buss*, 16 Cal.4th at 48-49. The duty is determined based on the facts known at the time of tender and cannot be avoided based on hindsight or pointing to disputed allegations. *Upper Deck*, 358 F.3d at 612; *Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co*., 68 Cal.App.4th 1030, 1044 (1998); *KM Strategic Management, LLC v. American Cas, Co. of Reading PA,* 156 F.Supp.3d 1154, 1170 (C.D. Cal. 2015).

Here, Travelers received notice of the *Rodriguez* Action on April 1, 2025. [SUF, ¶10] Because the Complaint alleged potentially covered bodily injury caused by an occurrence, Travelers' duty to defend arose immediately upon tender. Rather than providing a defense, Travelers denied coverage based on the Pollution Exclusion despite possessing no facts or conclusive evidence establishing its application. Travelers thereby breached its duty to defend.

### C. The *Rodriguez* Action Alleges "Bodily Injury" Caused by an "Occurrence"

Travelers' Policy covers bodily injury which is defined to include, "[p]hysical

harm, including sickness or disease, sustained by a person; or …[m]ental anguish, injury or illness, or emotional distress, resulting at any time from such physical harm, sickness or disease." [SUF, ¶4]

The *Rodriguez* Complaint alleges that Rodriguez suffered a cardiac arrest and other injuries after exposure to gases and fumes at the jobsite and further alleges that Defendants negligently operated, maintained, and failed to warn regarding gas lines, valves, storage tanks, and wells. [SUF, ¶9] These allegations plainly allege bodily injury and describe accidental, negligence-based conduct constituting an occurrence under California law. *See, Liberty Surplus Ins. Corp. v. Ledesma & Meyer Construction Co.,* 5 Cal.5th 216, 221-225 (2018), *as modified* (July 25, 2018).

Travelers does not dispute that the *Rodriguez* Action alleges "bodily injury" within the meaning of its Policy. Accordingly, the only remaining question is whether Travelers can meet its burden of establishing that the Pollution Exclusion conclusively eliminates all potential for coverage.

### D. The Pollution Exclusion Does Not Apply

#### 1. California Law Requires Exclusions To Be Interpreted Narrowly Against the Insurer

Under California law, Travelers bears the burden of proving that the Pollution Exclusion plainly, clearly, and conclusively eliminates all potential for coverage. *MacKinnon*, 31 Cal.4th at 655-56; *see also, Align Tech., Inc. v. Federal Ins. Co.*, 673 F. Supp. 2d 957, 967 (N.D. Cal. 2009).

California courts have repeatedly emphasized that insurers cannot satisfy that burden through speculation or by relying on disputed allegations. In the duty-to-defend context, courts have held that an insurer "does not meet its burden of establishing an exclusion's application by pointing to unproven and disputed allegations in the very complaint it is called upon to defend." *KM Strategic,* 156 F.Supp.3d at 1170.

*In J. Lamb, Inc.*, 100 Cal. App. 4th at 1039, the court described the uniquely

demanding burden imposed on insurers seeking to rely on exclusions:

> An insurer may rely on an exclusion to deny coverage only if it provides *conclusive evidence* demonstrating that the exclusion applies. . . . Thus, an insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds. [italics in original]

Travelers cannot meet that burden here.

**2. Travelers Cannot Establish Application of the Pollution Exclusion as a Matter of Law**

Travelers denied coverage based on the Policy's Pollution Exclusion, which excludes bodily injury arising from the discharge, dispersal, release, or escape of pollutants. [SUF ¶¶3,14] Travelers contends that the alleged hydrogen sulfide exposure falls within that exclusion. California law, however, does not permit the Pollution Exclusion to be applied so broadly.

**a. The Pollution Exclusion Does Not Apply Under *MacKinnon***

Before the California Supreme Court decided *MacKinnon*, the Wyoming Supreme Court in *Gainsco Ins. Co. v. Amoco Production Co.*, 53 P.3d 1051 (Wyo. 2002), addressed a strikingly similar scenario involving <u>hydrogen sulfide gas</u>, oilfield operations, and a nearly identical pollution exclusion. There, an employee died after being overcome by hydrogen sulfide gas while working at an oil field operated by the insured. *Id.* at 1054. The court framed the central issue as whether the pollution exclusion is limited to environmental pollution or instead extends to personal injuries caused by irritants or contaminants under ordinary operational circumstances. *Id.* at 1064.

The Wyoming Supreme Court rejected the insurer's expansive interpretation and held that the exclusion was limited to environmental pollution, explaining: "We cannot believe that any person in the position of the insured would understand the word

'pollution' in this exclusion to mean anything other than environmental pollution." *Id.* at 1066. The court, therefore, held that the pollution exclusion did not bar coverage for a hydrogen sulfide exposure arising out of oilfield operations. *Id.*

The California Supreme Court subsequently adopted this same narrow interpretation in *MacKinnon*, the leading California authority on interpretation of the pollution exclusion, and relied on *Gainsco* in its analysis. In *MacKinnon*, a tenant suffered injuries after a landlord's pest-control spraying, and the insurer argued that the pollution exclusion barred coverage. Rejecting that expansive interpretation, the Court held that the exclusion is limited to traditional environmental pollution:

> The pollution exclusion has been, and should continue to be, the appropriate means of avoiding '"the yawning extent of potential liability arising from the gradual or repeated discharge of hazardous substances *into the environment.*"' (Emphasis in original.) [Citations.] We think it improper to extend the exclusion beyond that arena." [Citations]

*MacKinnon,* 31 Cal.4th. at 645. [emphasis added]

Significantly, the Court cited and relied upon *Gainsco*, highlighting its holding that injuries caused by hydrogen sulfide gas released during oilfield operations did not fall within the pollution exclusion:

> Considering those jurisdictions that have taken a definitive position, as represented by a published opinion of the state supreme court, the narrower interpretation of the pollution exclusion appears to be in the majority. … ***Gainsco Ins. Co. v. Amoco Production Co.*** **(Wyo.2002) 53 P.3d 1051, 1066 [death caused by hydrogen sulfide fumes accidentally emitted from a truck not excluded]**; …

*Id.* at 642 n.2. [emphasis added]

The Court further explained that the exclusion's references to "discharge, dispersal, release or escape" are terms commonly associated with environmental

pollution and cautioned that a literal interpretation of "pollutant" would produce absurd results and erode coverage for bodily injury. *Id.* at 650-54.

In short, *MacKinnon* holds that: (1) "pollutant" cannot be interpreted literally to encompass every irritant or contaminant; (2) the exclusion is limited to injuries arising from events commonly understood as environmental pollution; and (3) where competing interpretations are reasonable, courts must adopt the interpretation favoring coverage. *Id.* at 645, 650-54.

Under *MacKinnon*, a localized hydrogen sulfide exposure at a single jobsite is not automatically "pollution" merely because hydrogen sulfide may qualify as an irritant or contaminant. At a minimum, Travelers cannot establish from the sparse allegations of the *Rodriguez* Complaint that the alleged exposure involved the type of traditional environmental pollution required to trigger the Pollution Exclusion.

If Travelers' interpretation were adopted, virtually any workplace injury involving a gas, fume, chemical, vapor, or irritant could be transformed into a pollution claim barred by the exclusion. *MacKinnon* expressly rejected such an expansive interpretation, warning that a literal reading of "pollutant" would effectively convert the exclusion into a broad no-bodily-injury provision and substantially erode the coverage that commercial general liability policies are intended to provide. *Id.* at 650-54.

The historical development of pollution exclusions shows they were intended to exclude liability for persistent polluters engaged in environmental contamination, not ordinary businesses whose operations might involve chemical substances. Bradley is not a commercial or industrial enterprise that generates or disposes of hazardous substances as a natural part of its business. The causal chain between Bradley's alleged conduct and Rodriguez's injuries is attenuated and allegedly based on ordinary negligence in jobsite operations, not environmental pollution activities.

The same result was reached in *Santaluz, LLC v. American Home Assurance Company*, 2010 WL 11509307, at *5 (S.D. Cal., Aug. 6, 2010). There, the insurer argued

that a pollution exclusion barred coverage for injuries allegedly caused by sewer gas containing hydrogen sulfide, ammonia, methane, carbon dioxide, sulfur dioxide, and nitrogen oxides. *Id.* at *5. Applying *MacKinnon*, the court rejected that argument and held that the pollution exclusion did not apply because the alleged release was not sufficiently widespread to constitute traditional environmental pollution. *Id.* at *6.

Specifically, the court held that sewer gas emitted from negligently installed sewer lines was not "traditional environmental pollution" and that the dissemination of gas into two homes was not "wide enough to cause its dissipation and dilution" as contemplated by *MacKinnon. Id*.

*Santaluz* is directly analogous. Like the sewer gas release in *Santaluz*, *Rodriguez* appears to allege a localized exposure to hydrogen sulfide gas arising from allegedly negligent conditions at a single site. Rodriguez's Complaint consists of a single paragraph and contains virtually no information regarding the circumstances of the alleged exposure, the mechanism of release, the extent of dissemination, or Bradley's role. Nor is there any indication that Travelers possessed extrinsic evidence at the time it received notice that conclusively demonstrated that the *Rodriguez* Action fell within the Pollution Exclusion. *Gonzalez v. Fire Ins. Exch.,* 234 Cal.App.4th 1220, 1239-40 (2015) ("Extrinsic facts negating an insurer's duty to defend must have been known to the insurer at the time of tender.")

Travelers therefore lacked a factual basis to conclusively determine that the alleged hydrogen sulfide exposure constituted traditional environmental pollution rather than a localized workplace exposure. Nothing in the Complaint suggests widespread dispersal, environmental contamination, or any other hallmark of environmental pollution contemplated by *MacKinnon* and *Santaluz*. Absent conclusive evidence establishing application of the Pollution Exclusion, Travelers could not eliminate the potential for coverage and therefore owed Bradley a defense upon receiving notice of the *Rodriguez* Action.

In *Travelers Property Cas. Co. of Am. v. City of Los Angeles Harbor Dept.,* 2016 WL 11520822 (C.D. Cal., Sept. 9, 2016), Travelers similarly argued that a pollution exclusion barred coverage because a hazardous substance, creosote, had been released into the environment following a fire at the Port of Los Angeles, causing injuries to workers. Applying *MacKinnon*, the court reviewed several decisions addressing pollution exclusions and observed that courts have considered factors such as whether the harm resulted from an industrial operation, whether the substance was regulated, and whether the alleged polluter was aware of the dangers posed by the substance. *Id.* at *4. Ultimately, however, the court focused on the central *MacKinnon* inquiry: whether a layperson would commonly regard the event as pollution. Although creosote was a regulated hazardous substance, the court concluded that its release as the result of an accidental fire would not "comport with the common understanding of the word 'pollute.'" *Id.* at *5. The court therefore denied Travelers' motion.

The same principle applies here. Even assuming hydrogen sulfide qualifies as a hazardous substance, that fact alone does not trigger the Pollution Exclusion. *City of Los Angeles Harbor* confirms that the relevant inquiry is not merely the nature of the substance involved, but whether the alleged event would commonly be understood as traditional environmental pollution. Nothing in the *Rodriguez* Complaint establishes that the alleged exposure arose from traditional environmental pollution as opposed to a workplace incident involving the alleged release of gas at a single worksite. Nor does the Complaint contain facts concerning the scope, dissemination, or environmental impact of the alleged release.

Notably, the *Rodriguez* Complaint alleges ordinary negligence involving the operation, maintenance, warning, and training associated with gas lines, valves, storage tanks, and wells, not environmental contamination, remediation, disposal of waste, or any other activity commonly associated with environmental pollution. [SUF ¶9] Under *MacKinnon* and *City of Los Angeles Harbor*, Travelers cannot rely solely on the

presence of hydrogen sulfide to conclusively eliminate the potential for coverage.

Other courts applying *MacKinnon* have reached the same conclusion. *American Zurich Ins. Co. v. James N. Gray Co*., 2014 WL 11430928, *4 (C.D. Cal. July 25, 2014), held that silica dust released during demolition work did not constitute traditional environmental pollution. Likewise, *Wesco Ins. Co. v. Brad Ingram Constr.*, 2024 WL 243344, at *2 (9th Cir. (Cal.) 2024), held that wildfire debris was not a "pollutant" because it was not an event commonly understood as pollution under *MacKinnon*.

More recently, courts applying California's duty-to-defend standard have rejected attempts to invoke pollution exclusions based merely on the presence of potentially harmful substances. *Liberty Mut. Fire Ins. Co. v. LX Hausys Am., Inc.,* 2026 WL 904224, *12-13 (C.D. Cal. Mar. 31, 2026), held that even if silica dust, metals, and VOCs could plausibly be considered pollutants, the insurer failed to establish that the alleged exposures constituted traditional environmental pollution or that the exclusion clearly eliminated all potential for coverage. Similarly, *Hanover Am. Ins. Co. v. Francini, Inc.*, 2026 WL 1020523, at *9 (C.D. Cal. Mar. 31, 2026), held that alleged exposures to silica and other metals could reasonably be understood as occupational exposure claims rather than environmental contamination and therefore did not negate the duty to defend under the pollution exclusion.

The common thread in these decisions is that pollution exclusions cannot be used as a catch-all to avoid coverage whenever a harmful substance is involved. Rather, consistent with *MacKinnon*, the exclusion is limited to traditional environmental pollution. Travelers' attempt to transform a sparse allegation of hydrogen sulfide exposure into environmental pollution is inconsistent with that settled authority.

**b. Cases Applying Reasoning Similar to *MacKinnon* Confirm That the Pollution Exclusion Does Not Apply to Hydrogen Sulfide Exposure**

Cases from jurisdictions outside of California addressing hydrogen sulfide gas

further confirm that the Pollution Exclusion does not apply here. In *National Fire Ins. Co. of Hartford v. James River Ins.,* 162 F.Supp.3d 898 (D. Ariz. 2016), *clarified on denial of reconsideration,* 2016 WL 2606984 (D. Ariz., May 6, 2016), the insurer argued that hydrogen sulfide gas was a "pollutant" and therefore excluded from coverage. Applying reasoning similar to that adopted in *MacKinnon*, the court rejected that argument, holding that even where hydrogen sulfide falls within the literal definition of a pollutant, the exclusion applies only where the underlying event constitutes traditional environmental pollution. *Id.* at 910-13. The court emphasized that terms such as "irritant" and "contaminant" cannot be read literally because doing so would render the exclusion virtually boundless and negate substantial portions of coverage. *Id.* at 911-12. Because the hydrogen sulfide exposure resulted from faulty plumbing work rather than traditional environmental contamination, the court held that the pollution exclusion did not excuse the insurer's duty to defend:

> After careful consideration, **the Court concludes that the Policy's clause operates to exclude coverage for traditional environmental pollution claims, and does not exclude the property damage caused by Hydrogen Sulfide gas created by Quik Flush's faulty pipe installation**. … The duty to defend arises at the earliest stages of litigation and generally exists regardless of whether the insured is ultimately found liable."

*Id.* at 913. [emphasis added]

Likewise, in *Essex Ins. Co., Inc. v. Berkshire Environmental Consultants, Inc.* 2002 WL 226172, at *3 (D. Mass., Feb. 7, 2002), the court held that a pollution exclusion did not apply to claims arising from workplace exposure to hydrogen sulfide gas. The court concluded that although hydrogen sulfide could be characterized as a pollutant, the exclusion was directed at traditional environmental pollution, not injuries arising from ordinary business operations:

> It is true, as Essex contends, that the alleged injuries resulted from the release of hydrogen sulfide, which may be considered to be a toxic substance, and therefore a pollutant. ... However, several of the other contract terms resist the interpretation urged by Essex. For instance, the words "discharge," "dispersal," "release," and "escape," are "terms of art in environmental law which generally are used with reference to damage or injury caused by improper disposal or containment of hazardous waste." (citations)

*Id.* at *3.

The court therefore held that a reasonable insured would not understand the pollution exclusion to bar coverage for localized workplace exposure claims:

> [T]**this Court concludes that the pollution exclusion does not apply because the underlying complaints do not allege that the injuries and deaths resulted from traditional environmental pollution**, … **the alleged injuries occurred during the course of normal business activities** … Accordingly, **the Court concludes that a reasonable insured would not have interpreted the pollution exclusion to excuse Essex from its duty to defend in this case.**

*Id.* at *4. [emphasis added]

Likewise, a reasonable insured in Bradley's position would not expect that bodily injury allegedly caused by ordinary negligence in operating a jobsite would be barred by a pollution exclusion traditionally associated with environmental contamination. The exclusion's language focuses on environmental discharge and dispersal, not workplace safety incidents. Bradley purchased insurance specifically to cover the type of negligence claims alleged in the *Rodriguez* Action.

*National Fire* and *Essex* are particularly instructive because both involved hydrogen sulfide gas and both rejected the argument that the mere presence of hydrogen

sulfide automatically triggers a pollution exclusion. Instead, both courts focused on whether the underlying event constituted traditional environmental pollution and concluded that localized exposures arising from ordinary business operations fell outside the exclusion's intended scope. The same is true here. Rodriguez alleges a potentially localized hydrogen sulfide exposure at a single worksite during the course of ordinary operations and Travelers cannot prove otherwise. The Complaint contains no allegations of environmental contamination of land, air, or water, and no facts suggesting the type of widespread environmental pollution contemplated by *MacKinnon*. Travelers cannot conclusively establish from the sparse allegations of the Rodriguez Complaint that the claimed exposure falls within the narrow scope of the Pollution Exclusion.

**c. Travelers Could Not Establish Application of the Pollution Exclusion Based on the Allegations Known at Tender**

Under *Haskel*, 33 Cal. App. 4th at 976–77, an insurer's duty to defend is determined based on the facts known at the time of tender. *See also, Upper Deck,* 358 F.3d at 612. Travelers' burden is particularly demanding here because the Complaint contained almost no factual detail. The Complaint does not identify how the alleged hydrogen sulfide exposure occurred, whether it originated from a pipeline, valve, storage tank, well, or some other source, whether any release occurred indoors or outdoors, whether the alleged gas remained confined to a localized area, whether it entered the broader environment, or whether any environmental remediation was required. The Complaint contains no allegations regarding what role, if any, Bradley played in the alleged events, particularly given that multiple defendants are named in the Complaint.

Yet, Travelers denied a defense as though those facts had already been proven, contradicting its own acknowledged lack of information. By email to Bradley dated April 2, 2025, Travelers confirmed that the Rodriguez Complaint is unclear as to the alleged hydrogen sulfide gas, asking Bradley:

> I would like to clarify some details regarding the location of the H2S (hydrogen sulfide gas). **The petition is unclear**, as it simply states fumes of gases from chemicals stored at the site. Do you have any knowledge of where these chemicals were stored?" [emphasis added] [SUF ¶11]

Bradley responded to Travelers' inquiry on April 2, 2025 and confirmed that it did not have definitive information regarding the alleged hydrogen sulfide and assumed it was a byproduct of a former tenant's petroleum exploration activities. [SUF ¶12]. On April 3, 2025, Bradley responded further and again confirmed its lack of knowledge regarding the facts surrounding the alleged hydrogen sulfide:

> Regarding the location of the H2S (hydrogen sulfide), **neither we nor our client, your insured, have knowledge of where chemicals were stored on the property at the time**…. **we are equally unaware of the specifics on how hydrogen sulfide was stored** or used by the operators, or whether it was simply a byproduct of the production process. [emphasis added] [SUF ¶13]

Under *Haskel, Upper Deck* and *Montrose*, Travelers was not entitled to fill these factual gaps with assumptions favorable to coverage denial. The question is not whether future discovery might ultimately reveal facts supporting application of the Pollution Exclusion. The question is whether Travelers possessed such facts when it denied Bradley a defense. It did not.

Travelers had to evaluate the *Rodriguez* Complaint based on the limited allegations before it when it denied coverage. Those allegations consisted of a single paragraph alleging that Rodriguez was exposed to "various fumes of gases from chemicals stored at the site" and that medical providers later attributed his cardiac arrest to hydrogen sulfide exposure. [SUF ¶9] The Complaint provides no information regarding the nature, extent, mechanism, or duration of the alleged exposure; whether any gas escaped into the environment; whether there was any meaningful discharge,

dispersal, release, or escape; or whether the incident bore any resemblance to the type of traditional environmental pollution contemplated by *MacKinnon*. Indeed, because the Complaint names multiple defendants and contains no meaningful factual allegations regarding Bradley's specific conduct, Travelers could not even determine from the face of the pleading what role Bradley allegedly played in the events giving rise to Rodriguez's injuries, the location of the gas, or any other detail. Travelers itself characterizes Rodriguez' complaint as "unclear" as to details surrounding the hydrogen sulfide gas. [SUF ¶11]

Travelers possessed no evidence, let alone the conclusive evidence required under California law, as to the location of the hydrogen sulfide gas, who handled it, whether the alleged hydrogen sulfide exposure involved widespread dissemination, dissipation, dilution, environmental contamination, or any other hallmark of traditional environmental pollution. Nothing in the allegations suggested the type of large-scale environmental event that courts have repeatedly distinguished from localized workplace exposures. *See MacKinnon, National Fire, Essex, Santaluz*, and *City of Los Angeles Harbor*. Here, the uncertainties regarding the hydrogen sulfide gas and what happened at the site are vast. Accordingly, Travelers lacked a factual basis to conclude that the alleged incident constituted "pollution" under *MacKinnon*, much less the conclusive evidence required to invoke the Pollution Exclusion.

Because Travelers could not conclusively establish, at the time it received notice of the *Rodriguez* Action, that the exclusion applied, it owed Bradley a defense as a matter of law.

**E. Travelers Failed to Carry Its Burden**

Travelers has not and cannot meet its burden of conclusively proving that the Pollution Exclusion applies to terminate its defense duty.

The *Rodriguez* Complaint alleges only that Rodriguez was exposed to gases or fumes from chemicals stored at a jobsite and later suffered a cardiac arrest allegedly

attributed to hydrogen sulfide exposure. As explained above, the Complaint contains no facts regarding the location of the gas, the source of the alleged exposure, the mechanism of release, the extent of dissemination, whether any gas escaped into the environment, whether any contamination of land, air, or water occurred, or whether the incident involved the type of traditional environmental pollution contemplated by *MacKinnon*. Yet Travelers denied a defense as though those facts had already been established.

That is not how California's duty-to-defend law operates. Travelers bore the burden of proving, through conclusive evidence, that the Pollution Exclusion applied "in all possible worlds." *J. Lamb*, 100 Cal.App.4th at 1039. Instead, Travelers relied on assumptions unsupported by the allegations and facts known at the time of tender. Under *Mirpad*, 132 Cal.App.4th at 1068, the existence of unresolved facts and possibilities alone establishes a potential for coverage and triggers the duty to defend. Travelers was required to evaluate its defense obligation based on the facts known to it at time of tender, not on speculation. *Haskel*, 33 Cal.App.4th at 976–77.

Moreover, *MacKinnon* and the numerous decisions applying it, including *Gainsco, Santaluz, National Fire, Essex, City of Los Angeles Harbor*, *James N. Gray, Wesco, LX Hausys*, and *Francini*, demonstrate that the mere presence of a potentially harmful substance or pollutant does not transform an incident into traditional environmental pollution. Those authorities consistently reject attempts to apply pollution exclusions to localized exposures, workplace incidents, ordinary business operations, and other circumstances not commonly understood as environmental pollution.

At a minimum, the *Rodriguez* allegations left open reasonable scenarios under which the claimed injuries arose from a potentially localized workplace exposure falling outside the Pollution Exclusion. Because those scenarios remained possible, Travelers could not eliminate the potential for coverage. As a matter of law, Travelers

owed Bradley a defense from the moment it received notice of the *Rodriguez* Action and breached that duty when it refused to provide a defense.

Even if Travelers can at some later time conclusively establish that the alleged hydrogen sulfide exposure constitutes traditional environmental pollution, that would not excuse its denial at the time of tender and would only extinguish Travelers' duty to defend prospectively, not retroactively. The duty to defend is determined at the time of tender based upon the allegations and facts then known to the insurer. Travelers did not possess conclusive evidence establishing that the Pollution Exclusion applied when it denied coverage. Accordingly, Travelers breached its duty to defend.

## V. AS A BREACHING INSURER, TRAVELERS MUST REIMBURSE BRADLEY'S DEFENSE FEES AND COSTS

California law is clear that where an insurer breaches its duty to defend, the insured's defense costs become recoverable damages flowing from that breach. As the court explained in *Risely v. Interinsurance Exch. of the Auto. Club,* 183 Cal.App.4th 196, 215 (2010), the "'basic measure of damages' for breach of duty to defend is costs incurred in defending suit" (citation omitted).

Travelers breached its duty to defend and as a result, is obligated to reimburse Bradley for all reasonable and necessary attorney fees and costs incurred in defending the *Rodriguez* Action from the date of tender through the final termination of that action at defense counsel's full market rates.

As a breaching insurer, Travelers forfeits all rights under California Civil Code section 2860 ("§2860"), including rate limitations. As the court explained in *Concept Enters., Inc. v. Hartford Ins. Co. of the Midwest*, 2001 WL 34050685, at *3 (C.D. Cal. May 22, 2001), "to take advantage of the provisions of [§2860], an insurer must meet its duty to defend and accept tender of the insured's defense…" The court further explained that a breaching insurer "cannot complain of paying marketplace rates" for its insured's defense. *Id*

*See also, Atmel Corp. v. St. Paul Fire & Marine Insurance Co.*, 426 F.Supp.2d

1039, 1047-48 (N.D. Cal. 2005) (holding that an insurer that failed to defend "cannot avail itself of the protections and limitations set forth in §2860."). The California Court of Appeal reached the same conclusion in *Hartford Casualty Insurance Co. v. J.R. Marketing*, 216 Cal.App.4th 1444, 1455 (2013), *aff'd in relevant part*, 61 Cal.4th 988 (2015), holding that when an insurer "fails to meet its duty to defend and accept tender, the insurer forfeits the protections of section 2860, including its statutory limitations on independent counsel's fee rates."

Most recently, *Southern Calif. Edison Co. v. Greenwich Ins. Co.*, 2023 WL 5505901, at *4 (C.D. Cal. July 28, 2023), reaffirmed that a breaching insurer forfeits its §2860 rights even after it later agrees to defend following an adverse court ruling. The court held that the insurer forfeited the right to take advantage of §2860's rate limitations for future defense fees, notwithstanding its subsequent acceptance of the defense. The court rejected the insurer's attempt to resurrect rights forfeited through its breach. The Court held:

> [A]s a result of Greenwich's breach of its duty to defend, it forfeited the right to take advantage of the rate limitations of Section 2860 for **future defense fees**, even though it has now "accepted" the defense of the Bobcat Wildfire lawsuits in accordance with the Court's January 18, 2023 Order…. [emphasis added]

Accordingly, because Travelers breached its duty to defend, it forfeited the protections and rate limitations of §2860. Travelers is therefore obligated to reimburse Bradley for all past and future reasonable and necessary defense fees and costs incurred in the *Rodriguez* Action at defense counsel's actual market rates.

## VI. BRADLEY IS ENTITLED TO PREJUDGMENT INTEREST

California Civil Code section 3287(a) provides that a party is entitled to prejudgment interest on damages that are certain or capable of being made certain by calculation. Travelers breached its duty to defend Bradley in the *Rodriguez* Action, and the resulting defense fees and costs became certain when defense counsel rendered

invoices and Bradley became obligated to pay them. Accordingly, Bradley is entitled to prejudgment interest on all unreimbursed defense fees and costs from the date each amount became due. *See Longs Drug Stores Cal., Inc. v. Federal Ins. Co*., 2005 WL 2072296, at *4 (N.D. Cal. Aug. 26, 2005); *Ultra Coachbuilders, Inc. v. General Security Ins*., 229 F.Supp.2d 284, 288 (S.D.N.Y. 2002) (applying California law).

## VII. CONCLUSION

Travelers concluded that a one-paragraph negligence cause of action alleging an exposure at a worksite necessarily involved traditional environmental pollution and denied Bradley a defense. But the Complaint does not include any facts about the alleged hydrogen sulfide, the alleged exposure occurred, or what role Bradley played despite the presence of multiple defendants. California's broad duty-to-defend law does not permit Travelers to fill those gaps with assumptions and then invoke the Pollution Exclusion to avoid its defense obligations. Based on the facts known at tender, Travelers lacked conclusive evidence establishing application of the Pollution Exclusion and therefore owed Bradley a defense.

By wrongfully denying Bradley a defense, Travelers breached its contractual obligations under the Policy. As a result, Bradley is entitled to recover all reasonable and necessary attorney's fees and costs incurred in defending the *Rodriguez* Action.

Bradley respectfully requests that the Court grant its Motion for Summary Judgment and enter judgment in favor of Bradley on Bradley's FAC.

Dated: June 22 , 2026

**LITTLE & TARZI APC**

By: /s/ Eric R. Little

Eric R. Little
Attorneys for Plaintiff
Bradley Land Company

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Plaintiff Bradley Land Company certifies that this Memorandum of Points and Authorities is 25 pages in length and complies with the page limitation set forth in the Court's Standing Order regarding motion papers.

Dated: June 22, 2026

**LITTLE & TARZI APC**

By: /s/ Eric R. Little
Eric R. Little
Attorneys for Plaintiff
Bradley Land Company